THEO. GORDON and wife v. AUSTIN COLLETT et al.

*Contract to Convey Land—Statute of Frauds—Mortgage, Priority of—Issues.*

1. The following memoranda on a sheet of note paper was *held* sufficient to bind M. C. A., the owner of the land, under the statute of frauds : " C.'s boundary. Beginning at a stake in Grant's corner and running north with the Rocky Ford road," &c., * * * " containing 1¼ acres more or less." "Received of A. C. $33, in part payment on a lot on Rocky Ford road. Oct. 27, 1885." (Signed) M. C. A. And on the opposite page of the paper : "I, A. C., promise to pay Mrs. M. C. A. $53 on a lot, adjoining W. Grant's, on Rocky Ford road, by the 1st of March, 1886." (Signed) A. C.

2. If M. C. A., at the request of C., after C. had executed a mortgage on the lot to G., conveyed the lot to R. A., upon payment by the latter of the balance of purchase money due by C., G. would have the right to be paid his mortgage debt, subject only to the payment to R. A. of the purchase money so paid by him.

3. But if, before the mortgage to G. by C., the latter abandoned his right to the land, and authorized R. A. to buy for himself, then G. took nothing by his mortgage.

4. It is error not to try all the material issues raised by the pleadings, unless they are waived.

CIVIL ACTION, heard before *Armfield, J.,* at Spring Term, 1889, of the Superior Court of BURKE County.

The following is a copy of the material parts of the case settled on appeal:

Plaintiffs bring suit for the foreclosure of a mortgage, dated the 21st July, 1887, to secure the sum of $253.90, a part of which sum, to-wit., $129, had been secured by a former mortgage, dated the 30th day of October, 1885. That said mortgages were given by the defendant Austin Collett, who claimed an interest in the land therein described, under the following writings:

### "COLLETT'S BOUNDARY.

"Beginning at a stake on Grant's corner and running north with the Rocky Ford road to Tate's line, then west with Tate's line 18 poles to a stake in Tate's line, then southward to Grant's black-oak, and then with said line to the beginning; containing 1¼ acres, more or less."

On the same piece of paper is the following:

"Received of Austin Collett $33, in part payment on a lot on Rocky Ford road, October 27, 1885.

"M. C. AVERY."

On the opposite side of the same piece of paper is the following:

"I, Austin Collett, promise to pay Mrs. M. C. Avery 53 dollars on a lot adjoining W. Grant's, on the Rocky Ford road, by 1st of March, 1886.

"(Signed)                    AUSTIN COLLETT.

"Balance due, $20, at 8 per cent. interest."

It further appears, from the complaint, that at the time said mortgage was executed by said Collett, the legal title to said land was in the defendant M. C. Avery.

Defendant M. C. Avery demurs to the complaint, and among other causes of demurrer, sets up the statute of frauds.

His Honor sustains the demurrer as to her, but does not dismiss the action. Defendants except.

Defendant Rufus Avery demurs, *ore tenus,* for the causes assigned in the demurrer of M. C. Avery.

Demurrer overruled and defendants except.

Defendant Rufus Avery answers, and sets up the statute of frauds, and, further, that the said Austin Collett was justly indebted to him, and had given him his note on the 1st of April, 1885, for the sum of $150, same being seven months prior to plaintiffs' first mortgage, and more than two years before the second mortgage, and that said indebtedness has been greatly increased since that time by his letting said defendant have money and goods.

Defendant Rufus Avery further pleaded that he had paid the purchase money.

His Honor held that the statute of frauds had no application, by reason of the admission in the answer. Defendants excepted.

The following issue was submitted to the jury :

" Did defendant Rufus Avery become bound for the purchase money of the land prior to the execution of plaintiff's mortgage?"

The defendant Rufus Avery testified that he paid to M. C. Avery the purchase money of the land under the following circumstances: That he had, as agent of M. C. Avery, made a parol contract with Austin Collett to sell him the land, but with the express understanding that if the purchase money, amounting to fifty dollars and interest, was not paid by the 1st of March, 1885, then said contract was to be void, and said Collett was to forfeit his improvements ; that

said Collett was not able to pay at the time appointed, and told witness if he would satisfy M. C. Avery for the purchase money, and give him a little more time, he would give him his note for $150, and the land should stand good for it, and if not paid by the year 1888, that he should have the said land ; that, on the strength of this assurance, witness did satisfy M. C. Avery by paying the purchase money, and Collett having failed to pay by 1888, under Collett's direction M. C. Avery made him a deed for a part of the land, the other having been sold to one S. J. Ervin.

And, thereupon, his Honor withdrew the issue which he had at first submitted, and substituted the following :

" Is the lien of plaintiffs' mortgage on the land in question superior to the rights and equities of defendant Rufus Avery, as set up in the answer ?

" What amount is defendant Collett indebted to plaintiff?"

Defendants excepted to the withdrawing of the issue first submitted and the submission of the last two to the jury.

There was no evidence offered by plaintiff to show that the receipt for " $33 " was for the same land as that included in " Collett's boundary," or that it was for any land, the word " lot " only being used in said receipt.

And, thereupon, his Honor instructed the jury that, upon the evidence—taking the evidence of Rufus Avery to be true—they must find the issue as to the superiority of the lien in favor of plaintiffs. To which instructions defendants excepted.

On judgment being rendered, defendants appealed to the Supreme Court.

*Mr. S. J. Ervin,* for the plaintiff.

*Messrs. C. M. Busbee, J. T. Perkins* and *J. B. Batchelor,* for the defendants.

MERRIMON, J. (after stating the case). The appellants contend that the plaintiffs obtained no title to the land in

question, nor any interest therein, by the deed of mortgage under which they claim, executed to them by the appellants Collett and wife, because the latter had no title to nor any interest in that land, that they could convey; that the husband Collett had but a parol contract with M. C. Avery, who had the title to it, whereby she contracted to convey the title to him when he should pay the purchase money he agreed to pay her for the same, and he had not paid such purchase money or any part thereof; and they pleaded that such parol contract was void under the statute of frauds, because no memorandum or note thereof was put in writing, and signed by M. C. Avery or by some other person by her authorized to sign the same. The plaintiffs, on the contrary, contended that the writing set forth above, beginning with the words "Collett's boundary," and ending with the other words, "balance due $20, at 8 per cent. interest," constitute a sufficient memorandum or note in writing, of the parol contract mentioned, to render it effectual in contemplation of the statute; and we are of the opinion that it is sufficient.

The memorandum in writing referred to is all on a half-sheet of ordinary commercial note paper, in the order as set forth above.    Between the description of the land and the receipt, which are on the same side of the paper, is a blank space about two inches wide, and the promissory note and memorandum at the foot of it fill the upper half of the paper on the opposite page, beginning close to the top of it.

The juxtaposition of the several parts of the writing, their nature, purpose and meaning, as expressed, their reference to and bearing upon each other, as appears from express words and plain implication, all go to show that the land described is that mentioned and referred to in the receipt; and the terms therein, "in part payment on a lot on Rocky Ford road," imply that Austin Collett, to whom the receipt was given, had contracted with M. C. Avery to purchase

from her, and she with him, to sell him the land mentioned and described.　The description certainly designated a piece or lot of land by metes and bounds, containing one acre and one quarter of an acre, situate on the Rocky Ford road, capable of being identified by parol proof.　The receipt near to such description, on the same side of the half-sheet of paper, refers to " a lot on Rocky Ford road," and, by the strongest implication, acknowledges a contract of sale of it to Austin Collett.　The note, immediately following the receipt on the opposite side of the paper, made by him to M. C. Avery, recites that it was given " on (for) a lot adjoining W. Grant's, on the Rocky Ford road."

The several parts of the writing clearly refer to one and the same transaction, and must be construed together.　It is evidence, and intended by the parties so to be, of a contract of sale of the lot of land specified, by M. C. Avery to Austin Collett, and she, by signing the receipt, acknowledged and signed this contract in writing as certainly as if it had been formally drawn out and signed by her.　Hence, the references and recitals.　The contract is informally and awkwardly expressed in the writing, but its nature, scope and purpose clearly appear from it, and this is a sufficient compliance with the requirements of the statute.　*Mayer* v. *Adrian*, 77 N. C., 83; *Farmer* v. *Batts*, 83 N. C., 387; *Thornburg* v. *Masten*, 88 N. C., 293.　It may be added, that if the contract in question were to be treated as not in writing, M. C. Avery, the person to be charged therewith, did not avail herself of the statute rendering such contracts void—she was not bound to do so; but she recognized and acted upon it, and, at the request of Austin Collett, conveyed the land to Rufus Avery.　If, therefore, Austin Collett, under the contract of purchase, paid for the land, or paid any part of the purchase money, the plaintiffs, by their deed of mortgage, acquired the whole of his interest in it—indeed, they acquired the right to have the land for the purposes of the

mortgage, subject to the right of M. C. Avery to have the purchase money due to her for it. And so also, if Rufus Avery, after the execution of the plaintiffs' mortgage, at the request of Austin Collett, paid the purchase money for the land or any part of it, and took the title therefor, having notice of the mortgage, as he must have had, as it was registered, then he took the title for the plaintiffs for the purposes of their mortgage, the land being charged with so much of the purchase money as he paid. Indeed, he, in that case, sustained the same relation to the plaintiffs as did M. C. Avery before she conveyed the title to the land to him. By virtue of her contract with Collett, and the mortgage made by him to the plaintiffs, she held the land for them, subject to the payment of the purchase money due her. Rufus Avery, having obtained the title, with notice of the plaintiffs' right, so holds the land for the like purposes, unless, as he alleges, his right to the land antedates the mortgage of the plaintiffs.

In his answer, Rufus Avery expressly alleges that Austin Collett, a long while before he executed the mortgage to the plaintiffs, abandoned his parol contract of purchase of the land, and consented to allow him to pay for it and take the title, and there was some evidence produced on the trial tending to prove this allegation. Collett might thus abandon his executory contract, or transfer it to another. We can see no reason why he could not. The contract to convey was not a conveyance of the title to the land, and might be abandoned. If the allegation just mentioned were true, then Collett conveyed nothing by his deed of mortgage to the plaintiffs, because he had nothing to convey—not even an equity. The plaintiffs, in their reply, expressly deny the allegation of the answer just mentioned, and thus a material issue of fact was raised by the pleadings. The appellants did not waive the trial of this issue, nor did the Court submit it to the jury. Perhaps the issue which was at first submitted to the jury, and afterwards, in the course of the trial, withdrawn,

might have been sufficient, though it was scarcely pertinent. The Court, however, the appellants objecting, withdrew it entirely and submitted another, not at all that raised by the pleadings. The issue raised was material and important, and should have been tried. All the material issues must be tried, unless waived, and it is error not to try them. *Porter* v. *The Railroad Co.*, 97 N. C. 66; *Davidson* v. *Gifford*, 100 N. C., 18.

It seems that the Court was of the opinion that Rufus Avery had rights and equities in conflict with the same of the plaintiffs. How this was, is not clearly disclosed by the record before us. If Collett owed him before he made the mortgage to the plaintiffs, and gave him a mortgage, by parol or otherwise, of his interest in the land he so contracted to purchase, to secure such indebtedness, this could not prejudice the rights of the plaintiffs as mortgagees, because such mortgage was not registered. At most, he could only be entitled to have so much of the purchase money, and the interest thereon, as he paid to M. C. Avery; to that extent he might be subrogated to the latter's rights, and lien for such part of the purchase money as he paid. Beyond, so far as appears, he would be on no better a footing than any other creditor who had a senior unregistered mortgage.

There is error, such as entitles the appellants to a new trial.

Error.                                    New trial.