D. T. HURDLE v. RAYMOND T. WHITE AND THOMAS L. JONES

No. 761SC997

(Filed 21 December 1977)

**1. Vendor and Purchaser § 1— contract to sell land—essential elements**

Essential elements of an agreement to sell land include a designation of the vendor, the vendee, the purchase price, and a description of the land, the

Hurdle v. White

subject matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers.

**2. Frauds, Statute of § 2.1; Vendor and Purchaser § 1— contract to sell land— check as memorandum of contract— sufficiency**

 A check drawn by plaintiff payable to defendant in the sum of $500 which bore the notation on its face, "For option on rest of Tuttle tract at at (sic) $45,000," which check had been endorsed and cashed by defendant was a sufficient memorandum of the parties' contract to meet the requirements of the statute of frauds, G.S. 22-2, since the check adequately identified the vendor and the vendee; the price was unequivocally stated as being $45,000; the amount of the purchase price was not rendered fatally uncertain because the check itself did not establish whether the $500 paid by the check was intended as a down payment to be applied against the purchase price or was intended only as consideration for granting the option, parol evidence being competent to ascertain the intended application of the $500; and the designation of the tract to be conveyed was sufficient to permit introduction of extrinsic evidence to identify the particular tract intended.

**3. Vendor and Purchaser § 3— contract to sell land— sufficiency of description**

 In an action for the specific performance of a contract to convey land, plaintiff's evidence sufficiently identified the land in question where it tended to show that the words "Tuttle tract" appearing on the memorandum of the contract referred to a well known and unique tract of land; a deed was recorded conveying that tract by that name to defendant; there was no other tract in the county known by that name; the Tuttle tract could be clearly identified and accurately located upon the ground by reference to the metes and bounds description on a recorded plat; and failure of the description to pinpoint the location of the tract by village, town, city, county, state or country did not amount to a patent ambiguity.

**4. Vendor and Purchaser § 3— contract to sell land—"rest of Tuttle tract"— sufficiency of description**

 In an action for the specific performance of a contract to convey land, description of the land in question as the "rest of Tuttle tract" was sufficient where plaintiff introduced evidence that defendant had earlier conveyed a sizeable portion of that tract to plaintiff and the "rest of Tuttle tract" referred to all of that tract which was still owned by defendant on the date of the transaction.

**5. Vendor and Purchaser § 2— contract to convey land—time of performance—manner and form of payment**

 Where no time of performance of a contract to convey land is stated, the law implies that the option must be exercised within a reasonable time, and where the contract fails to specify the manner and form of payment, the contract is construed to require payment to be made in cash simultaneously with tender or delivery of the deed.

APPEAL by plaintiff from *Small, Judge*. Judgment entered 15 September 1976 in Superior Court, PERQUIMANS County. Heard in the Court of Appeals 30 August 1977.

This is a civil action to obtain specific performance of a contract to convey land. At the time the action was commenced the land involved was owned by the original defendant, White. Thereafter, and after a notice of lis pendens had been filed, White conveyed the land to Jones, who was subsequently joined in this action as an additional party defendant.

Plaintiff alleged that on 15 July 1975 he and White entered into a contract whereby White gave plaintiff the option to purchase the land for the purchase price of $45,000.00, that plaintiff accepted the offer contained in the option and was ready, willing and able to pay the purchase price, but defendant refused to convey. The land involved was described in plaintiff's complaint as follows:

[L]ying and being in Belvidere Township, Perquimans County, North Carolina and more particularly described as follows:

> The Tuttle Tract containing 431.5 acres as described and delineated on plat prepared by T. J. Jessup, Registered Surveyor, entitled "Charlie Frank White Tuttle Tract-Craney Island, 431.5 acres, Belvidere Township, Perquimans County, North Carolina" which plat is now recorded in Plat Book 4, page 93 in the Office of the Register of Deeds of Perquimans County, excepting however, the lot formerly conveyed to Raymond T. White and wife, Della W. White, by deed now duly recorded in Deed Book 43, page 509 in the Perquimans County Register of Deeds Office, containing one acre of land together with a right-of-way and the right-of-way heretofore conveyed by Charlie Frank White recorded in Deed Book 52, page 346 and Deed Book 52, page 484 in the Perquimans County Office of the Register of Deeds, to Lawyers Title Insurance Corporation, Trustee and reference is made to said deeds for more particular description. This being a portion of the same property conveyed to Raymond T. White and wife, Della W. White, by certain deed recorded in Book 59, page 603 in the Perquimans County Office of the Register of Deeds.

Excepting however from the above description is that property described in that certain deed from Raymond T. White and wife, Della W. White, and Thomas L. Jones, Trustee, recorded in Book 66, page 50 and containing 89.99 acres more or less.

Defendants denied the contract and, among other defenses, pled the statute of frauds.

At trial, plaintiff testified in support of the allegations in his complaint. To meet the defense of the statute of frauds, plaintiff introduced in evidence a check dated 15 July 1975 drawn by him payable to defendant White in the sum of $500.00, which check had been endorsed and cashed by White. On the front of the check appeared the notation:

For option on rest of Tuttle tract at at (sic) $45,000.

Defendants stipulated that the signature of White endorsed on the back of the check was genuine and that White received the sum of $500.00 from negotiation of the check. Other evidence will be referred to in the opinion.

At the conclusion of plaintiff's evidence, the court granted defendants' motion for a directed verdict. Plaintiff appeals from the judgment dismissing his action.

*Twiford, Seawell, Trimpi & Thompson by C. Everett Thompson for plaintiff appellant.*

*White, Hall, Mullen & Brumsey by Gerald F. White and John H. Hall, Jr., for defendant appellees.*

PARKER, Judge.

The question presented by this appeal is whether the check was a sufficient memorandum of the contract to meet the requirements of our statute of frauds, G.S. 22-2, which provides that "[a]ll contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith . . . ." We hold that under the facts of this case the check endorsed by White was a sufficient memorandum of the contract, and accordingly we reverse the judgment dismissing plaintiff's action.

[1] A memorandum, by its very nature, is an informal instrument, and the statute of frauds does not require that it be in any particular form. A check can be a sufficient memorandum, provided it contains expressly or by necessary implication the essential elements of an agreement to sell. Annot., 153 A.L.R. 1112 (1944); Annot., 20 A.L.R. 363 (1922). A signature endorsed on the back of such a check has been held to be a sufficient signing. *Harper v. Battle*, 180 N.C. 375, 104 S.E. 658 (1920). Essential elements of an agreement to sell include a designation of the vendor, the vendee, the purchase price, and "a description of the land, the subject-matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers." *Lane v. Coe*, 262 N.C. 8, 12, 136 S.E. 2d 269, 273 (1964).

[2] In the present case the check was clearly adequate to identify the vendor and the vendee, and the purchase price was unequivocally stated as being $45,000.00. The amount of the purchase price was not rendered fatally uncertain, as defendants contend, because the check did not of itself establish whether the $500.00 paid by the check was intended as a down payment to be applied against the purchase price or was intended only as consideration for granting the option. The writing clearly stated the price for the land, and parol evidence was competent to ascertain the intended application of the $500.00 payment. Moreover, although the price to be paid is certainly an essential element of a contract for the sale of land, our Supreme Court has held that where, as in the present case, the vendor is the party to be charged, our statute of frauds does not require that the price be stated in writing. *Lewis v. Murray*, 177 N.C. 17, 97 S.E. 750 (1919); *Bateman v. Hopkins*, 157 N.C. 470, 73 S.E. 133 (1911); *Thornburg v. Masten*, 88 N.C. 293 (1883). Thus, in the present case parol evidence was in any event competent to establish the purchase price.

[3] The land was described on the check as being the "rest of Tuttle tract." The designation of a tract of land by its popular name has long been recognized as sufficient under the statute of frauds to permit the introduction of extrinsic evidence to identify the particular tract intended. *Cherry v. Long*, 61 N.C. 466 (1868) (Land described as "Rayner tract" held sufficient); *Simmons v. Spruill*, 56 N.C. 9 (1856) (land described as the "William Wynn

farm" held sufficient); Annot., 23 A.L.R. 2d 6, at p. 32-39 (1952). *See also Smith v. Low*, 24 N.C. 457 (1842). In the present case plaintiff introduced in evidence a deed dated 24 October 1969 from Thomas L. Jones, Commissioner, to defendant White and his wife, Della (who is now deceased), recorded in Deed Book 59, Page 603 in the office of the Register of Deeds of Perquimans County. This deed described the lands conveyed thereby as follows:

> The Tuttle tract containing 431.5 acres as described and delineated on a plat prepared by T. J. Jessup, Register (sic) Surveyor entitled "Charlie Frank White-Tuttle Tract— Craney Island— 431.5 acres, Belvidere Township, Perquimans County, North Carolina" which plat is now duly recorded in Plat Book 4 on page 93 in the office of the Register of Deeds of Perquimans County . . . .

Plaintiff also introduced in evidence the plat above referred to recorded in Plat Book 4 on page 93. This plat shows the boundary lines, marked by courses and distances and by reference to adjoining property owners, of a tract of land which is designated thereon as the "Tuttle Tract 431.5AC." No question was raised as to the accuracy or authenticity of this plat. Plaintiff also presented evidence that the tract of land shown on the plat was commonly known in the community as the "Tuttle Tract" and that no other property in the county was known by that name. Plaintiff's evidence thus shows that the words "Tuttle Tract" appearing on the check refer to a well-known and unique tract of land; that a deed has been recorded conveying that tract by that name to defendant White; that there is no other tract in Perquimans County known by that name; and that the Tuttle tract can be clearly identified and accurately located upon the ground by reference to the metes and bounds description on the recorded plat.

Defendants nevertheless contend that even if the description is sufficient as to a tract of land in Perquimans County, the failure of the description to pinpoint the location of the tract by "village, town, city, county, state or country" amounts to a patent ambiguity. We do not agree. The transaction must be evaluated in light of the circumstances of the parties.

> "The presumption is strong that a description which actually corresponds with an estate owned by the contracting party is intended to apply to that particular estate . . . ."

... "When all the circumstances of possession, ownership and situation of the parties, and of their relation to each other and the property, as they were when the negotiation took place and the writing was made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement."

*Lewis v. Murray*, 177 N.C. 17, 20-21, 97 S.E. 750, 752 (1919). *See also Norton v. Smith*, 179 N.C. 553, 103 S.E. 14 (1920). Here, plaintiff and defendant White were both citizens and residents of Perquimans County, and all the facts point inescapably to the conclusion that the "Tuttle tract" refers to a specific, clearly identified tract of land in Perquimans County. For other cases in which the omission of the town, township, or county has not been held to have created a patent ambiguity, see *Harper v. Battle, supra* (the location on the memorandum apparently referred to the location of the bank rather than the location of the land); *Gordon v. Collett*, 102 N.C. 532, 9 S.E. 486 (1889); *Thornburg v. Masten, supra.*

[4] Having concluded that the words "Tuttle tract" refer to a specific tract of land, we turn now to an examination of the entire description on the check which reads, "rest of Tuttle tract." The words "rest of" indicate that the description applies to only a portion of the Tuttle tract. "A contract to convey, excepting a part of the land described, is valid provided the land excepted can be identified." *Kidd v. Early*, 289 N.C. 343, 354, 222 S.E. 2d 392, 400 (1976). Admittedly, the mere words "rest of," standing alone, fail to identify the portion of the Tuttle tract which is to be excluded, but those words take on a clear meaning when interpreted in light of the circumstances of the parties and the land. *See Lewis v. Murray, supra; Norton v. Smith, supra.* At the time of the transaction, the defendant no longer owned the entire Tuttle tract because he had earlier conveyed an 89.99-acre portion of that tract to the plaintiff. The deed regarding that transaction was introduced into evidence and clearly indicated the portion of the Tuttle tract which had already been conveyed to the plaintiff. Defendant no longer owned the entire Tuttle tract, and it was therefore impossible for him to convey the entire tract to plaintiff

in this transaction. Plaintiff's earlier purchase of part of the Tuttle tract leads to the conclusion that the "rest of [the] Tuttle tract" refers to all of that tract which was still owned by defendant on the date of the transaction.

[5] The memorandum makes no mention of time of performance or manner of payment, but omission of those terms is not fatal. Where no time of performance is stated, the law implies that the option must be exercised within a reasonable time. *Lewis v. Allred*, 249 N.C. 486, 106 S.E. 2d 689 (1959); *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 173 S.E. 2d 496 (1970); *Hardee's Food Systems, Inc. v. Hicks*, 5 N.C. App. 595, 169 S.E. 2d 70 (1969). Where the contract fails to specify the manner and form of payment, the contract is construed to require payment to be made in cash simultaneously with tender or delivery of the deed. *Kidd v. Early, supra.*

Furthermore, the language of the memorandum is adequate to show that there was a meeting of the minds of the parties sufficient to establish the existence of a contract. *See Chason v. Marley*, 224 N.C. 844, 32 S.E. 2d 652 (1945). Although a contract may be held invalid if material portions are left open for future agreement, *Kidd v. Early, supra*, we have held that the memorandum in this case contains the essential elements of a contract. While it is true that plaintiff sought to have an option drafted later which was to include all of the terms of the transaction, the memorandum contains all of the essential terms required by the Statute of Frauds, and later negotiations regarding subordinate features of the agreement do not negate the existence of a contract. *Yaggy v. B.V.D. Co., supra.*

Therefore, we conclude that the memorandum in the form of a check in this case contained only a latent ambiguity, that extrinsic evidence was admissible to aid the court in applying the description to the exact property to be sold, and that plaintiff offered sufficient extrinsic evidence to require submission of the case to the jury. Upon a new trial, defendants will have the opportunity to present evidence in support of the allegations in their answer pleading that the option was obtained by actual fraud and misrepresentation. Upon the record before us, their motion for directed verdict should have been denied.

Reversed and remanded.

Judges MARTIN and ARNOLD concur.