**MONA ELECTRIC GROUP, INC., Plaintiff,**

v.

**TRULAND SERVICE CORPORATION, Defendant.**

**No. CIV.A. 01–895–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 30, 2002.

Michael John Lorenger, Esquire, Hogan & Hartson, McLean, for plaintiff.

Andrew North Cook,Esquire, Bell, Boyd & Lloyd, Washington, D.C., for defendant.

*MEMORANDUM OPINION*

HILTON, Chief Judge.

This matter comes before the Court on Plaintiff's motion for partial summary judgment, Defendant's motion for summary judgment and Defendant's cross-motion for partial summary judgment on its federal preemption affirmative defense.

Plaintiff and Defendant are competing corporations in the business of electrical service contracting. Thaddeus Gerardi

(hereinafter "Gerardi"), was hired by the Plaintiff as an apprentice electrician in 1971. Gerardi worked for the Plaintiff from 1971 until 1980, from 1986 until 1989 and from 1991 until February 2001. From 1995 until 2000, Gerardi was employed as a Field Service Manager. In 2000, Gerardi became Plaintiff's Business Development Manager. In April 2000, a supervisor at Mona presented Gerardi with an Employment Agreement (hereinafter "Agreement") to sign. The Agreement prevented Gerardi from soliciting Plaintiff's customers for a year following his departure from the corporation. The supervisor did not inform Gerardi that his job depended on his signing the Agreement, nor did the supervisor inform Gerardi that any promotion would be dependent upon his signing the Agreement. In sum, Gerardi was not informed of any consequences that would result from his failure to sign the agreement. Gerardi left Mona in February 2001 to work for Defendant corporation.

Plaintiff alleges that Gerardi violated the Agreement by soliciting Mona customers while at Truland. Plaintiff argues that Defendant has tortiously interfered with the Agreement, has tortiously interfered with Plaintiff's prospective contracts, and has misappropriated Plaintiff's trade secrets. Defendant contends that the Agreement is not valid for lack of consideration, and that there was no misappropriation of trade secrets.

Summary judgment is appropriate where there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or non-

existence could lead a jury to different outcomes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. *See Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir.1996) (en banc).

■ In order to pursue a successful claim for tortious interference of a contract under Virginia law, four elements must be met. Plaintiff must prove that a valid contract exists, that there was knowledge of the contract on the part of the interferor, that there was intentional interference inducing a breach of the contract, and that the disrupted party was damaged by this breach. *See Commerce Funding Corp. v. Worldwide Security Services*, 249 F.3d 204, 210 (4th Cir.2001), *citing Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97, 102 (1985). All four of these factors are necessary in order for a tortious interference of contract action to be sustainable.

In determining whether a valid contract exists, the Court must first ascertain whether the contract is ancillary to an employment agreement and supported by adequate consideration. Plaintiff cites *Simko v. Graymar*, 55 Md.App. 561, 567, 464 A.2d 1104, 1107 (1983), to support the proposition that continued employment

constitutes adequate consideration for a restrictive covenant.

There is a split in the courts that have looked at this issue. The majority have followed the *Simko* rationale, holding that continued employment for a substantial period of time furnishes consideration. *See Daughtry v. Capital Gas Co., Inc.*, 285 Ala. 89, 229 So.2d 480 (1969), *rehearing denied* Jan. 8, 1970; *Roessler v. Burwell*, 119 Conn. 289, 176 A. 126 (1934); *Tasty Box Lunch Co. v. Kennedy*, 121 So.2d 52 (Fla.App.1960); *Thomas v. Coastal Industrial Svcs., Inc.*, 214 Ga. 832, 108 S.E.2d 328 (1959); *Maynard v. Kohls*, 203 N.W.2d 209 (Iowa Sup.Ct.1972); *Frierson v. Sheppard Building Supply Co.*, 247 Miss. 157,- 247 Miss. 157, 154 So.2d 151 (Miss.1963); *Sarco Company of New Jersey v. Gulliver*, 3 N.J.Misc. 641, 649, 129 A. 399 (Ch.1925); *Bettinger v. North Fort Worth Ice Co.*, 278 S.W. 466 (Tex.Civ.App.1925). Other courts follow the reasoning set forth in *Kistler v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975), which ruled that continued employment, by itself, does not create implied consideration. *See Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (Pa.1974); *Forrest Paschal Machinery Co. v. Milholen*, 27 N.C.App. 678, 220 S.E.2d 190 (1975); *Morgan Lumber Sales Co. v. Toth*, 41 Ohio Misc. 17, 321 N.E.2d 907 (1974); *Poole v. Incentives Unlimited, Inc.*, 338 S.C. 271, 525 S.E.2d 898 (S.C.Ct. App.1999), *aff'd* 345 S.C. 378, 548 S.E.2d 207 (S.C.2001). Plaintiff argues that its continued employment of Gerardi following his acceptance of the Agreement constitutes adequate consideration under the majority rule. As the court in *Simko* noted, "courts in the majority position have found sufficient consideration for the restrictive covenant in either the agreement not to discharge or in the continued employment for a substantial period of time after execution of the restrictive covenant." *Simko*, 55 Md.App. at 567, 464 A.2d at 1107.

Neither the Fourth Circuit nor the Supreme Court of Virginia has addressed this issue. However, the Supreme Court of West Virginia, deciding a contract governed by Virginia law, noted that "Virginia's highest court would probably follow the holding in Kistler that when the relationship of employer and employee is established without a restrictive covenant not to compete, any agreement thereafter not to compete, must be in the nature of a new contract based upon new consideration." *PEMCO Corp. v. Rose*, 163 W.Va. 420, 427, 257 S.E.2d 885, 889 (1979) (noting that "continued employment of the employee, in and of itself, did not constitute consideration for the non-competition covenant."). This Court also holds that the Virginia Supreme Court would find that the mere continuation of employment does not furnish consideration for a non-competition agreement under the facts of this case. Consideration is required for all contracts and there seems to be no logic or reason to carve out an exception for an agreement not to solicit a company's customers. The continued employment of Gerardi simply cannot constitute consideration for the restrictive covenant. Plaintiff did not advise Gerardi that failure to sign the agreement would result in termination or any other employment action. Even under the facts of the *Simko* case, the employee was threatened with termination if he failed to sign the restrictive covenant. Here, no such condition was expressed by the Plaintiff or its agents. Under these circumstances, this Court finds, viewing the facts in the light most favorable to the Plaintiff, there was no consideration for the Agreement and the Agreement is, therefore, void.

Even if the Agreement were valid, however, there is no evidence that Gerardi violated the Agreement by "soliciting" Mona's customers. Truland hired Gerardi

as a Service Account Manager. Gerardi's responsibilities in this new position include preparing estimates and working in the field. A part of Gerardi's position at Truland is handling customer solicitation calls. In the electrical contracting field, customers often solicit bids from the electrical contractors. Plaintiff has not presented any evidence that Gerardi has initiated calls to customers during his employment at Truland. Rather, the evidence is that Gerardi responded to customer calls to Truland for bids. Gerardi's acts of responding to customers who solicited him for bids clearly do not violate the Agreement. Gerardi did not sign an agreement that prohibited him from competing with Mona, he signed an agreement that precisely prohibited his "solicitation" of Plaintiff's customers. Plaintiff asserts that the Agreement prevents Gerardi from submitting estimates to customers who call him to request bids. This would turn the non-solicitation agreement into a non-competition agreement, and under the unambiguous terms of the Agreement, only solicitation of Mona's customer's is prohibited. Thus, were the Court to find the Agreement valid, no evidence has been presented in this case that Gerardi violated the terms of the Agreement, and summary judgment should be granted for the Defendant.

Finally, the Court finds that there is no factual basis to support the claim that trade secrets were misappropriated in this case. Plaintiff has not provided any evidence to support its claim of misappropriation. Plaintiff argues that Gerardi knew the Plaintiff's data from his prior employment and therefore must have used secret information in making new bids. However, mere speculation by the non-moving party on a motion for summary judgment "cannot create a genuine issue of material fact." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Thus, Plaintiff's claim of misappropriation of trade secrets cannot survive Defendant's motion for summary judgment.

For these reasons, Defendant's motion for summary judgment shall be granted. This Court does not rule on Defendant's federal preemption affirmative defense as it is unnecessary in determining the outcome of this case.

An appropriate order shall issue.

### ORDER

This matter comes before the Court on Plaintiff's motion for partial summary judgment, Defendant's motion for summary judgment and Defendant's cross-motion for summary judgment for partial summary judgment on its federal preemption affirmative defense. For the reasons stated in the accompanying memorandum opinion, it is hereby,

ORDERED that Plaintiff's motion for partial summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED and this case is DISMISSED.